On the Merits.
L
The first question that presents itself on the merits, is in regard to the collations of Mrs. Eeltus, (Mary E. Brown). The Judge a quo fixed the amount of the collations due by her at $127,925.73. The items of the account that make up this total, complained of by her, are as follows:
1. $8,494.21, her alleged share of the crop of 1860, sold by Hawkins & Norwood.
2. $7,500, amount of her note, given for the excess of the price of the Oakland Plantation, over her legacy.
3. $6,164.19, the amount of certain accounts of George A. White, for goods furnished the store on the Oakland Plantation.
These are all the items mentioned in the brief of her counsel, which, he insists, should be deducted from the amount of her collation fixed by the judgment below.
*454 First. As to the first two items, we are satisfied they are correct.
We believe from the evidence, which it is needless to review in detail, that both the crops of 1859 and I860, were sold and distributed by Hawkins & Norwood, and the amount stated was the share of this heir in the crop of I860; and this distribution was made in accordance with the terms of the will,-which we have quoted above.
Second. Before the sale of the Oakland Plantation, it was agreed among all the heirs, that Mrs. Feltus should take it on account of Inn-legacy. She was to take it at §70,000, and it was in accordance with this agreement, and the purchase made by her under it, that the note for the excess of the price over the legacy was given. We perceive nothing wrong or illegal in this. It was a legitimate subject for a contract, and we see no reason why she should not be held to it.
Third. In regard to the third item, our conclusion is that she should not be charged with it, and that the judgment in thus charging her was erroneous.
Before the purchase by her of the Oakland Plantation, it was managed by her husband for the executor, at that time, James N. Ventress. On this plantation was a store, in which merchandise was sold to the laborers on the plantation and the public generally.
In the account filed by Ventress of his executorship, he sought to credit himself with the amount of the goods, etc., bought of White for the Oakland Plantation. This account was opposed by Mrs. Feltus,' and the credit for these accounts of White, to the amount stated, of §6,164.19, was refused Ventress.
In the present suit, this amount is charged against Mrs. Feltus, and makes part of the aggregate sum she is required to collate by the judgment of the lower court. It is true that her husband had charge of the store where the goods covered by this account were sold, as a manager for the executor, but there is no evidence in the record that would charge. Mrs. Feltus with their juice or value.
Her husband may be liable for them, but there is nothing- to fix any liability on her. Mrs. Feltus had nothing to do with the store or with the management of the plantation, nor is it shown that the goods were received by her, or enured in any way to her benefit, and we are at a loss to understand under what pretext they were charged to her. This amount must, therefore, be deducted from the amount of the collation to be made by her.
There is also a judgment that enters into this partition for $25,595.20, which may be disposed of in this connection. This judgment was rendered in the same oj)position of Mrs. Feltus to the account of Ventress, executor, referred to. The ojrposition of Mrs. Feltus was sustained and a balance rendered against the. executor for the amount stated, in *455 favor of tile succession of Janies N. Brown, and tliis forms one of the assetts to be partitioned. There was an appeal taken from this judgment to the Supreme Court, reported in 27 A. 328, and the Court, in its decree, reserved to the executor “ the right to claim in the final settlement and partition of the estate, all amounts he alleges to have paid to the heirs.”
Under this reservation, on the trial of the case in the court below, the Judge allowed certain deductions from this judgment on account of the payments referred to, and among others, this account of George A. White, which was credited on the judgment against Ventress, and charged to Mrs. Feltus as an amount paid to her by the executor. As we have seen, she was not responsible for the amount, and it should not have been deducted from the said judgment. This will reduce the amount of the credits on the judgment against Ventress to $11,321.38, making the balance due on the judgment, $14,273.82. We think the terms of the reservation in the decree of the Supreme Court referred to, absolute in allowing credit to Ventress in this judgment on account of the payments made by him to the heirs, and for whatever cause made. The lower court reduced the balance due on this judgment to $8,108.68, and restricted the effect of it to the interest of Mrs. Feltus, in this balance, a fourth interest, amounting to $2,027.40.
This restriction was owing to the fact that after the filing of the account by Ventress, as executor, all the heirs were cited, and none of them opposed the same, save Mrs. Feltus. It is true that Isaac D. Brown offered an opposition, but it was disallowed as coming too late. Their silence as to the account, when thus cited, and failure to oppose it, were regarded by the Court of the first instance as a tacit ratification of it, or an acceptance of it just as rendered.
The change made in it, adversely to the executor, was affected solely by the opposition of Mrs. Feltus, and she alone could be the beneficiaiy of it.
We cannot say the Court erred either in this, or in directing the mode and manner, of its settlement. The only error made was in the amount that was to accrue to Mrs. Feltus; it should have been one-fourth of $14,273.82, amounting to $3,568.43, instead of the amount stated in the judgment, $2,027.40.
II.
The amounts to be collated by Isaac D. Brown, under the judgment appealed from, are $130,625.45. His counsel urge that he should not be charged with the distributive shares in the crops of 1859 and 1860, sold by Hawkins and Norwood, inasmuch as he was. a minor at the time, and that he could be only thus charged in the event that these amounts were received by him after his majority.
*456 It will be seen, that by the terms of the last will of James N. Brown, these annual distributions of the proceeds of the crops were required to be made, and the evidence shows they were made, and the whole or part of the minors’ shares invested as directed in the will. The property in these shares became vested in the minors in the hands of the administrators, and if lost subsequently, the loss was theirs. lies peril domino. Succession of Cochrane, 29 A. 232; Succession of Macias, 31 A. 129.
It is also contended that interest should be allowed him on the. amount of his legacy, from his majority till he received it. Interest is only due a legatee from the day of the demand of his legacy, under an express provision of lawn C. C. 1626,163].
There is no evidence of such demand before the sale was made to pay the legacy. Nor is there any force in the proposition that the plaintiff is estopped from opposing the allowance of interest by reason of her alleged assent and admission in the agreement for the sale of the property to pay the legacy. We do not so construe the ruling referred to.
The Judge a quo disallowed the interests, and the ruling was correct.
The evidence fully sustains all the items comprising the account, showing the sum total of the collations due.
A very large part of the charges have the effect of res judica ta against, him, resulting from legal proceedings to v'hicli he w>as a party.
The total amount fixed by the decree of the lower court is subject to the operation of a judgment rendered on the 31st of December, 1874, by the Parish Court of Iberville, and may be reduced by the effect of the 7th clause of that judgment, which need not here be recited, and will be alternately determined in the final partition proceedings to be hereafter conducted, as directed by the judgment of the lower court.
III.
Lastly, we come to the question of the collations to be made by the plaintiff, Mrs; Ventress.
It is urged, that in addition to the sums allowed against her by the judgment of the lower court, she should be. charged wdth the amounts she failed to collect from the previous executors, and the value of certain slaves donated to her by her father.
1, In regard to the first, we are satisfied that the losses resulting to the succession by the failures of the executors preceding plaintiff, were losses she could not have repaired by any possible diligence. The greater part of them were losses caused by the war, and were, in their nature, irretrievable. This charge against her is not pressed with vigor, and was properly rejected by the court a qua.
*457 2. The next question touching the collation for the slaves, is the most serious one presented in the whole case, and we decide it only after the most mature deliberation, and exhaustive review of the authorities bearing on the subject, in view of the equitable considerations opposed to the charge, and it is with a feeling of regret that we are constrained to differ with our learned brother of the lower court in the conclusion reached by him on this point.
The plaintiff was one of the major heirs of her father at his decease. In his last will, as will be seen from the quotation heretofore made, the testator declared that lie had previously given, or advanced, to his major heirs, fifty thousand dollars. A part of this sum included ten slaves, donated by the deceased to his daughter, the plaintiff, on the 10th of January, 1859, and of which she had possession previous to that date. Four of these slaves were returned after the death of the testator or donor, to the trader from whom they were originally purchased, and the rest remained in the possession of herself and husband till their emancipation.
Under these facts, upon whom must the loss fall: upon the succession or upon the plaintiff?
This question must, in our opinion, be determined by the provisions of the Code of 1825, in operation at the opening of the succession of James FT. Brown.
Article 1328 of that Code provides:
“ Real estate (French text le Men fonils) given by the father, mother, or other ascendants to one of their children or descendants, and which has been destroyed’by accident while in the possession of the donee, and without his fault, previous to the opening of the succession, is not subject to collation.”
The corresponding Article 1250, of the Revised Codé, substitutes the words “ ini'movable property,” for the words real estate, without other change.
Article 1301 of the old Code further declares :
“ When slaves have been given,.the donee is not permitted to collate them in ltind; he is bound to collate for them by taking less, according to the value of the slaves at the time of the donation.”
Art. 1362: “ Therefore the donation of slaves contains an absolute' transfer of the rights of the donor to the donee in the slaves thus given. They are at the risk of the donee, who is bound to support their loss or deterioration, at the same time he profits by the children born of-' them.” See also. 14 L. 352.
(The italics in the above are our own).
From the above wé deduce :
That if land or other like immovable property is given, and the same *458 is destroyed or lost without the fault of the douee, before the succession of the donor is opened, the donee is not required to collate, but the loss must fall on the succession.
If the rights and obligations of the plaintiff depended on this Article, she would not be discharged from the obligation to collate, because the loss did not take place before the opening of the succession, but afterwards.
This Article, it is apparent, however, does not refer to slaves.
If a sime was given, by the terms of the law, the obligation to collate existed whether the loss occurred before or after the opening of the succession, because it is expressly declared, that the title to the slave vests in the donee absolutely from the date of the donation.
We are aware, however, that the case of G-uillory, 29 A. 495, does not support this entire proposition, it having been therein held, that a slave lost to the donee by emancipation before the opening of the succession need not be collated; but this decision, as earnestly claimed, does not support the pretension of plaintiff’s counsel, that the donee is equally freed from the obligation to collate, where the loss, from a similar cause, has occurred after the opening of the succession.
In the case referred to, the donation Was made in I860, and the succession of the donee opened by his death in 1875, and the loss, of course, happened before the latter event. Here the gift was made, and the property delivered before the opening of the succession, and destroyed or lost after the opening, which renders the case cited wholly inapplicable to the instant one. Nor do-we find anything of sufficient force in the commentary on the Code Napoleon, (Mai'cadé’s) to which our attention has been called, to authorize us to depart, in the determination of this question, from what we conceive to be the plain and positive terms of our own law.
Another serious question is, however, presented, as to whether any effect can be given to the donation of the slaves, the same being by an act under private signature. It is quite cloar, if the effect of this donation was dependent solely upon this instrument and to be considered exclusively with reference to it, that its nullity would be apparent, and the case with the plaintiff, since the law declares such an act a nullity. It is, however, to be viewed and determined in connection with other provisions of the law.
Art. 2274, R. C. C. (2254, C. C.) provides: “ The confirmation, ratification, or voluntary execution of a donation by the heirs or assigns of the donor, after his decease, involves their renunciation to oppose either defects of form or any other exceptions.” See also 4 R. 157; 3 A. 522.
From the recital heretofore given, it is almost needless to say, that *459 with respect to the gift in question, after the death of the donor, this confirmation or ratification took place. It is shown by the inventory of the succession, and by nearly all the legal and judicial proceedings that have transpired during the long course of the administration of the estate; and whilst the record abounds with such proof, we have been pointed to no act or expression, and can discern none on the part of the heirs, in disapproval of the donation, unless we except the repudiation of it by the donee after the loss of the slaves. Nor can the management or control of the property by the husband of the donee, if such was the case, detract from the legal effect of the ratification, to be inferred from the facts stated. And that ratification was to render the donation as perfect and complete as if the act conferring it had been an authentic act, under the declared principle that omnis ratihábitio retrotrahitur, ete.
The conclusion from the foregoing is therefore unavoidable, that the plaintiff must be charged with the $15,000, the price or value of the slaves.
The credit of $5,000 claimed by her counsel, and allowed by the Judge a quo, was proper. It was a palpable error upon the face of the record, by which it was sought to bind her for the amount stated, and she was clearly entitled to the benefit of the correction made. We see no reason to change any other item in the account of this collation.
The total of all amounts to be collated by plaintiff was fixed by the lower court at $96,221.91. Adding the value of the slaves donated will increase the amount to $111,221,.91.
IV.
The correctness of the collations to be made by the heirs of Jno. M. Brown, as fixed by the Judge a quo, are not controverted before this Court.
This disposes of all the matters in controversy.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be amended, by fixing the total amounts to be collated by Mrs. Mary E. Brown, wife of Henry J. Eeltus, at' one hundred and twenty-one thousand seven hundred and sixty-one dollars and fifty-four cents, ($ 121,751.54); the amounts to be collated by Mrs. Julia A. Ventress, plaintiff, at one hundred and eleven thousand two hundred and twenty-one dollars and ninety-one cents, ($111,221.91.)
The total amount of the collations to be made by Isaac D. Brown, subject to be reduced in the final proceedings of partition, as he has contributed or shall contribute to pay the debts and charges in the final account of Mrs. Julia A. Ventress, executrix, as provided by the *460 judgment of tlie-Parish Court of Iberville, rendered on oppositions to her account, on 31st of December, 1874.
The amount allowed by the decree of tho lower court, on the judgment rendered on the opposition of Mrs. Eel tus to the account of James N. Yen tress; executor, to enure to the benefit of Mrs. Eeltus, under the conditions expressed in that judgment, is increased to $3,668.43.
The judgment, as thus amended, is affirmed, the costs of the lower court to he paid by the Succession' of Jamos N. Brown, and of this appeal, by the plaintiff, Mrs. Julia A. Yentress.